MIRIAM TAUBER, ESQ. MT-1979
*Attorney for Plaintiff*
885 Park Avenue 2A
New York, New York 10075
Tel:    323.790.4881
Email: MiriamTauberLaw@gmail.com

DAVID LOPEZ, ESQ. DL-6779
*Attorney for Plaintiff*
171 Edge of Woods Road
P.O. Box 323
Southampton, New York 11969-0323
Tel:    631.287.5520
Fax:   631.283.4735
Email: DavidLopezEsq@aol.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Aaron Rubenstein,<br><br>        Plaintiff,<br>    v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>        Nominal Defendant,<br><br>        and<br><br>LIBERTY MEDIA CORP.,<br><br>        Defendant. | No. **16-cv-7283**<br><br>**COMPLAINT FOR RECOVERY OF SHORT-SWING PROFITS UNDER 15 U.S.C. § 78(p)(b)**<br><br>**JURY TRIAL DEMANDED** |

**AARON RUBENSTEIN**, by Miriam Tauber, Esq. and David Lopez, Esq., his attorneys, complaining of the defendants, respectfully alleges the following upon information and belief, except as to himself and his own acts which Plaintiff alleges on personal knowledge.

1

## NATURE OF ACTION

1. This is an action to recover "short-swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended ("the Act"), 15 U.S.C § 78p(b).

2. Section 16(b) is a strict liability statute. A plaintiff must prove only that the defendant was an insider of a company with equity securities registered under Section 12 of the Act or one of its subdivisions, who profited from the purchase and sale of the company's equity securities or derivative securities within a period of less than six months. Evidence of the defendant's intent, misuse of inside information, or bad faith is irrelevant and not required to establish liability. Section 16(b) is not punitive and insiders are simply required to disgorge profits realized and retained in violation of the Act.

3. LIBERTY MEDIA CORPORATION ("Liberty Media," or "Liberty"), the Defendant, is an insider of LIVE NATION ENTERTAINMENT, INC. ("Live Nation"), the Nominal Defendant.

4. Liberty Media profited from writing a put on 15,900,000 shares, which expired unexercised within a period of less than six months of its writing, rendering the premium received on its writing a short-swing profit recoverable by Live Nation, or, upon its failure to act on its own behalf within 60 days of demand, by action by any of its shareholders including Plaintiff.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is conferred upon this court by Section 27 of the Act, 15 U.S.C. § 78aa.

6. Venue is proper in this district pursuant to Section 27 of the Act, 15 U.S.C. § 78aa. The common stock of Live Nation is listed and traded on the New York Stock Exchange

located within the District, and hedging transactions, which generated the pool of shares underlying the derivative securities to be described herein, were effected in whole or in part on that national exchange. Both Live Nation and Liberty Media conduct extensive business and are found within the District. The forward sale was contracted with a counterparty found within the District.

## THE PARTIES

7. Plaintiff Aaron Rubenstein is a shareholder of Live Nation, a resident of Providence, Rhode Island.

8. Nominal Defendant Live Nation is the self-described "global leader for live entertainment." Live Nation (which is also the parent company of Ticketmaster) is the main ticketing and production company for major venues and events within the District. Live Nation is a Delaware corporation, with principal offices at 9348 Civic Center Drive, Beverly Hills, California 90210, and offices within the District at 220 West 42nd Street, New York, New York 10036. This action is brought in the right and for the benefit of Live Nation, which is named as a party defendant solely in order to have all necessary parties before the court.

9. Defendant Liberty Media is a media conglomerate that owns majority or significant interests in media, communications, and entertainment businesses, including several that are based or found within the District. Liberty Media is a Delaware corporation, with principal offices at 12300 Liberty Boulevard, Englewood, Colorado 80112.

## STATUTORY REQUISITES

10. At all times relevant the common stock of Live Nation was registered under Section 12(b) of the Act.

11. At all times relevant, Liberty Media was an insider of Live Nation, to wit: a more-than 10% beneficial owner of a class of equity security and thereby a fiduciary.

12. The violations of Section 16(b) of the Act to be described herein involve non-exempt securities in non-exempt transactions engaged in by non-exempt persons within the meaning of the Act.

13. Demand for prosecution was made on Live Nation on December 1, 2015, with a renewed demand sent on June 22, 2016. By letters of counsel dated December 8, 2015, and July 25, 2016, and email exchanges in June, July, and August 2016, Live Nation has made known its intention not to pursue the claim asserted herein. Further delay in the bringing of suit would be a futile gesture.

14. This action is brought within two years of the occurrence of the violations to be described herein or within two years of the time when reports required by 15 U.S.C. § 78p(a) setting forth the substance of the transactions here complained of were first filed with the Securities & Exchange Commission ("SEC").

## CLAIM FOR RELIEF

15. On or about September 4, 2014, Liberty Media entered into a forward purchase agreement with a bank counterparty, under the terms of which Liberty Media agreed to purchase, on the settlement date, the number of Live Nation shares purchased by the bank during its "initial hedging" period (but no more than 15,900,000 shares), at a "forward price" to be determined at the conclusion of the initial hedging period in accordance with a formula set forth in the forward agreement, based on the market price of Live Nation common stock during that period and other costs incurred by the bank in establishing its hedge. The settlement date was to be approximately

14 months after the inception of the forward purchase contract, and worked out to be November 27, 2015.

16. At inception, the forward agreement described in Paragraph 15 was not a derivative security because the number of shares to be purchased by Liberty Media and the price to be paid for the shares were not fixed. Liberty's entry into the forward agreement on September 14, 2014 was not a Section 16(b) transaction.

17. The forward agreement became a derivative security, and a Section 16(b) transaction occurred, at the conclusion of the "initial hedging" period on September 28, 2015, when the bank's completion of its hedge established the fixed the terms on which Liberty was to purchase the shares. The bank's hedge covered the maximum 15,900,000 shares covered by the forward agreement, and accordingly fixed the number of shares to be purchased by Liberty at settlement. Likewise, the conclusion of the hedging period established the fixed "final" forward purchase price of $24.9345 per share.

18. Because the forward agreement provided for Liberty to purchase the bank's Live Nation shares, the derivative security established by Liberty Media under the forward agreement when its terms were fixed on September 28, 2015, was a "call equivalent" position under SEC Rule 16a-1(b). Under SEC Rule 16b-6(b), Liberty's establishment of a call equivalent derivative position under the forward agreement is further deemed a Section 16(b) purchase by Liberty of the 15,900,000 underlying Live Nation shares covered by the bank's hedge and subject to delivery to Liberty Media for the fixed purchase price.

19. Under the forward agreement Liberty Media not only obtained the right, but also (and in exchange) incurred the obligation to purchase the shares underlying the bank's hedge for

a fixed price at settlement. As such, the "call equivalent" derivative position Liberty Media established consisted of two components under SEC Rule 16a-1(b):

(a) a "long call option"—representing Liberty Media's right to purchase, or "call," the Live Nation shares at a fixed price, potentially reflecting a discount from the market price of the shares on the settlement date; and

(b) a "short put option"—representing Liberty Media's obligation to purchase the shares (and the bank's corresponding right to sell, or "put," the shares to Liberty Media) at the same fixed price, even to the extent higher than the market price at settlement.

20. Liberty obtained the right to purchase—the long call option component to its call equivalent position, described in Paragraph 19(a)—from the bank, in exchange, as the sole consideration, and a *quid pro quo* for undertaking its corresponding obligation to purchase—i.e., the short put option that Liberty provided, or "wrote," in favor of the bank, described in Paragraph 19(b). The long call option the bank provided to Liberty "locked in" Liberty's purchase price, thereby establishing Liberty's *right to payment from the bank* (in shares or cash) in an amount equal to any *increase* in the market value of the Live Nation shares at settlement over the fixed forward price. In exchange for the bank's commitment to this locked-in purchase price, Liberty incurred a corresponding commitment to purchase the shares at the same locked-in price—an *obligation to pay the bank* (or provide equivalent value) an amount equal to any *decrease* in the market value of the shares from the fixed forward price. No other payment or consideration was exchanged by the parties when the forward price was fixed, establishing Liberty's derivative position under the agreement and constitute the effective Section 16(b) date of the forward transaction, as discussed in Paragraphs 15-18.

21.   Both long and short option components to Liberty Media's "call equivalent" derivative security position, which were simultaneously established and exchanged with the bank under the forward agreement at the conclusion of the hedging period on September 28, 2015, were also simultaneously closed on the forward settlement date of November 27, 2015.

22.   On the November 27, 2015 settlement date, Live Nation stock traded at prices ranging from $25.27 to $25.69 per share, with a closing price of $25.61. The forward agreement accordingly settled in Liberty Media's favor, with the bank surrendering to Liberty the excess value of the shares delivered over the forward price paid. Liberty elected to "physically settle" the forward by taking possession of the bank's 15,900,000 shares, and paying the bank the pre-established fixed forward price of $24.9345 per share.

23.   Because the settlement resulted in an effective payout to Liberty (i.e., Liberty received Live Nation shares with a value greater than the purchase price paid to the bank), the closing of Liberty's call equivalent derivative security position included the effective "exercise" of its long call option component, which initially established Liberty's right to the excess value ultimately received by Liberty at settlement. Liberty's exercise of the long call component to its derivative security position is exempt from Section 16(b) under SEC Rule 16b-6(b).

24.   Conversely, the bank received no value, but rather incurred a loss, from the establishment of the fixed forward price, because the market value of the shares the bank was required to deliver to Liberty at settlement was greater than the fixed price paid. The market value of the shares at settlement reflected an *increase* over the forward price; thus, Liberty's short call option—which established its obligation to pay the bank an amount equal to any potential *decrease* in the market value—was not triggered or "exercised" by the bank, but rather expired "unexercised" when the forward transaction settled. The expiration of the short option

component to Liberty's call-equivalent derivative security position under the forward agreement occurred alongside, and simultaneously with, Liberty's exempt exercise of the long option component (as described in Paragraph 21), on the forward settlement date of November 27, 2015, when Liberty's derivative position was closed.

25. The expiration of the short option component to Liberty's derivative position, on the November 27, 2015 settlement date, occurred within six months of the establishment of that position on September 28, 2015, when the forward price was fixed. The expiration of the short option component to Liberty's call equivalent derivative position therefore constitutes a non-exempt Section 16(b) transaction that can be matched with its establishment, giving rise to short swing profits under SEC Rule 16b-6(d).

26. SEC Rule 16b-6(d) provides: "Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option."

27. The "premium received" by Liberty Media for "writing" or establishing the short option in favor of the bank—which constitutes recoverable short swing profit under Section 16(b) and SEC Rule 16b-6(d)—is the value of the consideration that Liberty received from the bank in exchange. As described in Paragraph 20, the consideration or "premium" Liberty received for providing the short option to the bank is the long call option that the bank provided to Liberty (and which Liberty ultimately exercised at settlement, yielding the payout described in Paragraph 22). Liberty's Section 16(b) liability may thus be determined by the value of the long call option component to Liberty's forward derivative security position at the time of its establishment on September 28, 2015, when the forward price was fixed.

28. The value of Liberty Media's call option on September 28, 2015, which dictates the amount of Liberty's potential liability under Section 16(b), is an issue of fact to be further developed over the course of discovery, including with the assistance of expert testimony if needed. At this time, Plaintiff estimates this value, and Liberty's liability under the statute, to be well in excess of $1,00,000. This estimate is based on a review of public records reflecting the market prices, on or around September 28, 2015, for exchange-traded call options providing a strike price (i.e., fixed purchase price) approximating the $24.9345 forward settlement price, and a settlement date on or around the November 27, 2015 date of the forward settlement.

**WHEREFORE**, Plaintiff demands judgment:

a) Requiring Liberty Media to account for and to pay over to Live Nation the short-swing profits realized and retained by it in violation of Section 16(b) of the Act, together with appropriate interest and the costs of this suit;

b) Awarding to Plaintiff his costs and disbursements including reasonable attorney's, accountants and expert witness fees; and

c) Granting to Plaintiff such other and further relief as the court may deem just and proper.

Dated:   New York, New York
         September 19, 2016

Yours, etc.

*s/ Miriam Tauber*

_____

Miriam Tauber
MIRIAM TAUBER LAW PLLC