# Exhibit A

Direct Dial: (650) 463-4661
robert.koenig@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600  Fax: +1.650.463.2600
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

December 9, 2015

*Via Email and Certified Mail*

Miriam Tauber, Esq.
885 Park Avenue #2A
New York, NY 10075

Re:   <u>Section 16 Demand – Live Nation/Liberty Media</u>

Dear Miriam:

On behalf of our client Live Nation Entertainment, Inc. ("Live Nation"), we are responding to your demand letter alleging that Liberty Media Corporation ("Liberty") may be liable to Live Nation under Section 16(b) of the Securities Exchange Act of 1934.

Upon its receipt, Live Nation forwarded your letter to representatives of Liberty. We have received the enclosed detailed response from Baker Botts L.L.P., counsel for Liberty, analyzing the forward purchase contract entered into by Liberty and the applicable law. Based on our review, we have concluded that no basis exists for the assertion of any liability on the part of Liberty to Live Nation under Section 16(b).

We note that the application of Section 16 to a forward purchase transaction such as that effected by Liberty is well-settled. The fixing of the forward purchase price under the forward purchase contract constituted a reportable "purchase" by Liberty; its physical settlement constituted an exempt exercise of a derivative security under Rule 16b-6(b).

Your citation to Rule 16b-6(d) in inapposite because Liberty was not the "writer" of the option. And in any event, that rule is not applicable to the closing of a derivative security position as a result of its exercise or conversion, which is exempted under Rule 16b-6(b).

Please see Baker Botts' letter for further explanation.

We trust you will find, as have we, that Baker Botts' letter puts to rest the claims set forth in your letter. We would appreciate your confirmation that you will withdraw your demand. In any event, please be advised that Live Nation deems the matter closed.

LATHAM&WATKINS LLP

        Please feel free to contact me if you have any questions.

        Very truly yours,

        Robert A. Koenig
        of LATHAM & WATKINS LLP

cc:    Michael Rowles, Executive Vice President and General Counsel, Live Nation Entertainment, Inc.
       James P. Beaubien, Latham & Watkins LLP
       Robert W. Murray, Baker Botts LLP

**BAKER BOTTS** LLP

| | | |
|---|---|---|
| 30 ROCKEFELLER PLAZA | AUSTIN | LONDON |
| NEW YORK, NEW YORK | BEIJING | MOSCOW |
| 10112-4498 | BRUSSELS | **NEW YORK** |
| | DALLAS | PALO ALTO |
| TEL +1 212.408.2500 | DUBAI | RIO DE JANEIRO |
| FAX +1 212.408.2501 | HONG KONG | RIYADH |
| BakerBotts.com | HOUSTON | WASHINGTON |

December 9, 2015

Michael Rowles
Executive Vice President and General Counsel
Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210

Re:   Section 16 inquiry

Dear Mr. Rowles:

We are counsel to Liberty Media Corporation ("Liberty"), and are responding on Liberty's behalf to your inquiry with respect to the letter, dated December 1, 2015 (the "Tauber Letter"), from Miriam Tauber, Esq. to Live Nation Entertainment, Inc. ("Live Nation"), which alleges Liberty may have obtained a "short-swing profit" pursuant to Section 16(b) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), as a result of the forward purchase contract referred to in the Tauber Letter (the "Forward Purchase Contract").

Apparently based on a Form 4 filed by Liberty with the Securities and Exchange Commission (the "SEC") on December 1, 2015 (the "December Form 4"), the Tauber Letter alleges that Liberty "wrote an option" with respect to 15,900,000 shares of Live Nation common stock on September 28, 2015, which then "expired" on November 27, 2015. As the "writing" of the option and its "expiration" occurred within a period of six months, the Tauber Letter alleges that Liberty reaped a short swing profit by virtue of that expiration, which is subject to disgorgement under Rule 16b-6(d). We find the argument in the Tauber Letter meritless on both the facts and the legal analysis.

As disclosed in Liberty's Amendment No. 1 to Schedule 13D, filed with the SEC on September 16, 2014, Amendment No. 3 to Schedule 13D, filed with the SEC on August 14, 2015, and Amendment No. 4 to Schedule 13D, filed with the SEC on September 30, 2015, in each case, with respect to Liberty's investment in Live Nation (together, the "Schedule 13D"), Liberty entered into the Forward Purchase Contract on September 4, 2014, with an unaffiliated counterparty. The Forward Purchase Contract expired 60 days after the end of the initial hedging period, on November 27, 2015, at which time the Forward Purchase Contract provided for either physical or cash settlement, with physical settlement being the default settlement method. Prior to such expiration, Liberty confirmed in the Schedule 13D that it intended to physically settle under the Forward Purchase Contract. The price to be paid by Liberty upon physical settlement was set forth in a formula contained in the Forward Purchase Contract, which equaled the volume weighted average of the volume weighted average prices of the shares of Live Nation common stock purchased by the counterparty during the initial hedging period plus a commission plus an amount equal to the counterparty's internal funding costs plus a spread. The

**BAKER BOTTS** LLP

- 2 -

initial hedging period ended on September 28, 2015, at which time Liberty's purchase price became fixed. Liberty filed a Form 4 with the SEC on September 30, 2015 (the "September Form 4"), disclosing in Table II the existence of the Forward Purchase Contract and Liberty's deemed purchase of 15,900,000 Live Nation shares thereunder.

The only difference between the forward price of $24.9063 identified as of September 28, 2015 (at the end of the initial hedging period), as disclosed in the September Form 4, and the final forward price paid by Liberty at settlement of $24.9345, as disclosed in the December Form 4, was a carrying cost incurred by the counterparty plus a spread. Hence, there was no opportunity for speculative abuse by Liberty during that 60 day period. Liberty physically settled with its counterparty on December 2, 2015, at which time it purchased 15,900,000 Live Nation shares under the Forward Purchase Contract. As stated in *Magma Power Co. v. Dow Chemical*, 136 F.3d 316, 322 (2nd Cir 1998): "the exercise of a fixed-price option [is] nothing more than a change from an indirect form of beneficial ownership of the underlying securities to a more direct one; because the insider by then is already bound by the terms of the option, the potential for abuse of inside information is minimal."

Under Section 16(b), for Liberty to generate a "short swing profit" it must effect both a sale and a purchase of Live Nation common stock within six months of each other, and each sale and purchase must be subject to Section 16(b). See *Feder v. Frost*, 220 F.3d 29, 32 (2d Cir. 2000) (a Section 16 claim for disgorgement requires that the plaintiff prove the existence of (1) a purchase and (2) a sale of securities (3) by a statutory insider (4) within a six-month period). Under Rule 16b-6(a), Liberty had a deemed non-exempt purchase under the Forward Purchase Contract (it established a "call equivalent position" in the parlance of the Rule) when its purchase price first became fixed on September 28, 2015. It then effected physical settlement of the Forward Purchase Contract in accordance with its terms, which closed on December 2, 2015. That physical settlement was exempt from Section 16(b) under Rule 16b-6(b), which exempts "the acquisition of underlying securities at a fixed exercise price due to the exercise or conversion of a call equivalent position." Liberty has not filed any Form 4s for the sale of any shares of Live Nation common stock since September 28, 2015, nor has Liberty filed any Form 4s for the sale of any shares of Live Nation common stock during the six-month period preceding that date. Accordingly, though Liberty had a non-exempt deemed purchase of 15,900,000 shares of Live Nation common stock on September 28, 2015, there has not been a non-exempt sale (under the Forward Purchase Contract or otherwise) within six months of such date which would have caused Liberty to either engage in short swing trading or obtain a short-swing profit.

Rule 16b-6(d) does not change the analyses. Rule 16b-6(d) "is designed to prevent a scheme whereby an insider with inside information ... writes a[n] ... option, and receives a premium for doing so, knowing, by virtue of his inside information, that the option will not be exercised within six months." See *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3rd 305, 308 (2nd Cir. 1998). Under Rule 16b-6(d), any short-swing profit recoverable "shall not exceed the premium received for writing the option." The potential profit from an unexercised call option is derived from the application of Rule 16b-6(a), which treats the writing of a call option as a deemed "sale" of the underlying shares for purposes of Section 16, and the

**BAKER BOTTS** LLP

- 3 -

early expiration, without exercise, as a "re-purchase" of those same shares by the writer of the option. See *Roth v. Goldman Sachs Group, Inc.*, 740 F.3d 865, 872 (2d. Cir 2014). Under Rule 16b-6(d), any profit so derived is limited to the premium received by the insider in writing the option. Hence, Rule 16b-6(d) is aimed at insiders that write short-dated exchange-traded options that involve both a deemed sale and a deemed purchase of the underlying shares.

The fixing of the purchase price under the Forward Purchase Contract cannot be construed as the writing of an option by Liberty within the meaning of Rule 16b-6(d). An option is written by the seller of the option: Liberty is the buyer under the Forward Purchase Contract. Nor did Liberty, as buyer, receive a "premium" for entering into the Forward Purchase Contract. A "premium" would have required the receipt by Liberty of a payment from its counterparty solely for Liberty "writing" an option: no such payment was made and Liberty did not "write" an option. And finally, as noted above, the Forward Purchase Contract did not expire unexercised, which is an essential element of Rule 16b-6(d). Liberty exercised its option for physical settlement under the Forward Purchase Contract at the end (or "expiration") of the Forward Purchase Contract.

For the reasons stated above, Liberty has not engaged in short-swing trading in Live Nation common stock, nor has it obtained a short-swing profit, contrary to the allegations in the Tauber Letter. We trust this letter satisfactorily responds to the claims made in the Tauber Letter.

Very truly yours,

*/s/ Robert W. Murray Jr.*

Robert W. Murray Jr.
of Baker Botts LLP