# MIRIAM TAUBER LAW

885 Park Avenue 2A • New York, NY 10075
MiriamTauberLaw@gmail.com • (323) 790-4881

July 19, 2017

**Via ECF**
Hon. Robert W. Sweet, U.S.D.J.
S.D.N.Y. (500 Pearl Street)

**Re:** *Rubenstein v. Liberty Media Corp.*, No. 16-cv-7283-RWS:
Plaintiff's Response to Liberty Media's Motion for Attorney's Fees;
and Plaintiff's Application to Extend the Time to Appeal the Court's Order

Your Honor:

    I write, along with my co-counsel David Lopez, in opposition to Defendant Liberty Media's Motion for Attorney's Fees (Dkt. No. 39), in which Liberty invokes the PSLRA to ask that the Court find that we and our client failed to comply with Rule 11 of the Federal Rules of Civil Procedure, and asserts that we should be sanctioned. Liberty's application for sanctions is meritless as a matter of law, and is based on the submission of deliberately incomplete pre-litigation correspondence designed to mislead the Court regarding the level of diligence exercised by Plaintiff's counsel in pursuing this action, which arises in an uncertain and evolving area of law.

    Moreover, as further described below, Liberty's Motion was intended as an improper threat to prevent an appeal, and should be denied as a violation of public policy. To prevent Liberty's Motion from serving its purpose of having an improper chilling effect on 16(b) litigation, Plaintiff requests an Order extending his time to file the Notice of Appeal until 30 days following the Court's Order resolving this Motion, as permitted by Federal Rule of Appellate Procedure 4(A)(iii) and Federal Rules of Civil Procedure 54 and 58 (together providing that the district court may extend the time to file a notice of appeal from the date of entry of a post-judgment order, e.g., on a motion for attorney's fees).

    **1. Plaintiff's 16(b) Claim Is Not Frivolous or Sanctionable**

    Liberty claims that Rule 11 attorney's fee sanctions are warranted because: (i) The Company's counsel advised Plaintiff's counsel of Defendants' (inherently partisan) view that Plaintiff's 16(b) claim was "novel" but relied on a "series of untenable stretches" from the law as stated in *Chechele v. Sperling*, 758 F.3d 436 (2d Cir. 2014), Plaintiff's counsel disagreed and persisted in filing this lawsuit; and (ii) Plaintiff previously withdrew his initial demand letter (dated December 1, 2015 (Pl. Ex. 1), but subsequently sent a renewed demand by email dated June 3, 2016 (Pl. Ex. 2) for reasons explained in Plaintiff's side of the pre-litigation correspondence, including Plaintiff's August 5, 2016 letter in reply to Defendants' Defendants' July 25-26 Demand Responses (Pl. Ex. 3) (the correspondence attached to this Opposition is omitted from Liberty's submission in support of its Motion).

    On its face, Liberty's Motion does not proffer any legitimate reason for imposing sanctions, in the form of attorney's fees or otherwise, under the PSLRA or Rule 11. Rule 11 attorney's fee

sanctions are only available if a plaintiff's claims are "frivolous." More specifically, sanctions are not warranted where a claim is "based on a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." F.R.C.P. 11(b) (2).

As a court recently held on a similar motion for attorney's fees brought by a successful 16(b) defendant (one who incurred the costs of defending the plaintiff's appeal to the United States Supreme Court): "Plaintiff's 16(b) claim was, to be sure, an invitation to extend the law beyond its present confines. Nevertheless, these arguments made logical sense and presented the court with a legitimate, nonfrivolous issue to decide." *Simmonds v. Credit Suisse Securities (USA) LLC*, No. 2:12-cv-01937-JLR (Order Denying Motion for Attorney's Fees, Dkt. No. 51 at 5, May 28, 2013) (attached as Pl. Ex. 4). Sanctions are inappropriate in this case for the same reasons.

As *Simmonds* reflects, a claim is not "frivolous," for purposes of the Rule 11 analysis "mandated" by the PSLRA, because it is a "long shot" or "unlikely to succeed." *Fishoff v. Coty*, 634 F.3d 647, 654-55 (2d Cir. 2011); *see also Zagami v. Cellceutix Corp.*, No. 15 Civ. 7194 (KPF), 2017 U.S. Dist. LEXIS 46682, at *28 (S.D.N.Y. Mar. 29, 2017) (distinguishing between the "mandatory sanctions *review*" required by the PSLRA and "mandatory *sanctions*," which are imposed under the mandatory PSLRA analysis *only if* Rule 11 is violated). Courts applying the PSLRA uniformly deny attorney's fee requests by prevailing defendants if a claim is "novel," or not "squarely foreclosed by [i.e., is distinguishable from] binding precedent." *Fishoff*, 634 F.3d at 654-55; *accord Simmonds* (Pl. Ex. 4).

In the correspondence Liberty submits to its Motion, Live Nation's counsel describes Plaintiff's 16(b) claim as "novel," and Liberty's Motion complains that Plaintiff attempted to *extend* the law stated in *Sperling*. These statements effectively acknowledge that Plaintiff's claim was not frivolous within the meaning of Rule 11 and the PSLRA, and defeat Liberty's Motion for Attorney's Fee sanctions—regardless of whether Plaintiff's demand was initially withdrawn and/or renewed, and (similarly) regardless of whether Plaintiff determines to appeal the Court's dismissal. *See, e.g.*, *Liu v. Credit Suisse First Boston Corp.*, 399 F. Supp. 2d 369, 372-75 (S.D.N.Y. 2005) (Plaintiff's pursuit of "novel theories that were ultimately rejected" did not violate Rule 11 or warrant sanctions under the PSLRA, even though original allegations were based on facts disproven by available information, which remained uncorrected); *accord Marcus v. W2007 Grace Acquisition I, Inc.*, 203 F. Supp. 3d. 332, 335 (S.D.N.Y. 2016) (same).

Plaintiff's 16(b) claim cannot credibly be described as having no *objectively* "reasonable chance of success." *E.g.*, Zagami, 2017 U.S. Dist. LEXIS 46682, at *25 (citing, *inter alia, Stark Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F. 3d 170, 177 (2d Cir. 2012) as requiring "objective unreasonableness" for sanctionable claims or conduct in the Second Circuit). As Your Honor will recall, Plaintiff's claim was based on a distinction between Liberty's "collarless" forward and the "collared" Pre-Paid Variable Forward Contracts construed by the Court in *Sperling* (and its predecessor District Court cases, which are in any event "non-binding" to the extent not incorporated within the *Sperling* rationale). Plaintiff argued that this "collarless" distinction deferred the effective 16(b) date of Liberty's forward from the original September 4, 2014 contract execution date, until the initial price-fixing event on September 28, 2015.

The Court rejected Plaintiff's "collarless" distinction and delayed 16(b) effective forward date under the modified *Sperling* analysis Plaintiff proposed, as part of the Court's 25-page opinion addressing the substantive merits of Plaintiff's claim, which in and of itself establishes the non-frivolity of this case. But it also bears noting that, prior to this litigation, Liberty's own counsel described Plaintiff's deferred treatment as the "well understood" application of 16(b) to Liberty's forward. (*See* Baker Botts Letter, Liberty Mot. Ex. C, Dkt. No. 39-3, at 4 ("1) At the inception of the forward purchase contract on September 4, 2014, there was no Section 16 event … 2) The forward purchase contract became a derivative security on September 28, 2015…")). In fact, prior to the initiation of this lawsuit, *counsel for all parties agreed* that the Section 16 date of Liberty's forward contract was deferred until September 28, 2015. (*See* Latham Letter, Liberty Mot. Ex. A Dkt. No. 39-1, at 2 (describing same treatment "well-settled" law). The Court decided this issue contrary to these expectations, which were previously shared not only by all counsel in this case, but also by other 16(b) practitioners (*see, e.g.*, Cleary Gottlieb *Sperling* analysis, Jan. 23, 2015, Pl. Ex. 5). Liberty's own changed posture on this issue, which Liberty apparently developed at some point between responding to Plaintiff's 16(b) demand and this lawsuit, demonstrates the inherent uncertainty that exists in this area of post-*Sperling* jurisprudence.

The other issues raised by Plaintiff's claim and decided by the Court were equally non-frivolous. The Court's determination that both put and call options embedded within Liberty's forward were *exercised* (and rejection of Plaintiff's argument that one of them expired) is in tension with the *Sperling* suggestion as to the default treatment of "in the money" and "out of the money" options, and application of SEC Rule 16b-6(d) to forward settlements. *See Sperling*, 758 F.3d at 466-67 (2d Cir. 2014) (looking to which party "won the bet") (Opinion, Dkt. No. 37, at 17-18). Finally, as the Court noted, the only case directly the other issue the Court addressed the calculation of the "premium" recoverable under Rule 16b-6(d) in the context of forward contracts—is currently pending Second Circuit review. *See Olagues v. Icahn*, No. 1:15-0898-GHW, 2016 U.S. Dist. LEXIS 37941 (S.D.N.Y. Mar. 23, 2016); (Opinion, Dkt. No. 37, at 21).

Given that even claims dismissed as "bordering on the absurd"—a description which, by any account, cannot apply to Plaintiff's 16(b) claim or arguments in this case—have unequivocally been found not to be sanctionable for purposes of the Rule 11 sanctions analysis under the PSLRA, *see, e.g., Livingston v. Cablevision System. Corp.*, 966 F. Supp. 2d. 208, 222-23 (E.D.N.Y. 2013), Liberty (or its counsel) should have been aware that Plaintiff's pursuit of this claim, and his counsel's conduct in bringing this lawsuit, were proper and do not warrant Attorney's Fee sanctions. It is well-established that the PSLRA does not penalize plaintiffs or their counsel for bringing questionable, but manifestly plausible, securities claims.

Imposing sanctions in this case would also be expressly contrary to the specific statutory enforcement policies of Section 16(b). As the SEC disclaims the authority to litigate short swing trading claims, courts have historically recognized that the Section 16 "watchdog" function falls exclusively to shareholders and their counsel, who are authorized, encouraged, and incentivized to monitor and enforce the 16(b) proscription for the company's benefit. *See generally* Romeo & Dye, Section 16 Treatise and Reporting Guide § 9.01[8]. Despite Liberty's attempts to malign Plaintiff and his counsel, Plaintiff was represented in this case by experienced lawyers—including David Lopez, who has specialized in bringing 16(b) claims for more than 47 years and is described by the leading treatise as "a formidable adversary" in Section 16 litigation, who "practices with

3

distinction" and is a "veteran" of the field. *Id.* § 9.02[3][a]. As Mr. Lopez (and this Court) can attest, most litigated 16(b) claims do not involve straightforward purchases and sales occurring squarely and certainly within the proscribed six-month time frame, but rather (as in this case) complex derivatives, e.g., options or forward contracts. These kinds of cases exemplify the shareholder "watchdog" role, by contributing to the development of 16(b) case law and facilitating the application of the strict liability statute to the increasingly varied universe of financial instruments.

### 2. Liberty's Purpose in Filing This Motion Was to Intimidate Plaintiff's Counsel and Prevent an Appeal of the Court's Dismissal Order

As the correspondence between the parties reflects, counsel for all parties enjoyed a mutually respectful working relationship throughout their communications regarding both of Plaintiff's demand letters, and for the duration of this litigation—right up until July 5, the day Liberty filed this Motion. The absence of any indication that Liberty had any grievance with Plaintiff or the conduct of his counsel (let alone any accusations of frivolous litigation or sanctionable conduct), reflects that this Motion is not only devoid of legal merit, but entirely lacking in substance and merely a pretext to intimidate Plaintiff's counsel. In fact, this was Liberty's actual motivation and purpose for filing its Motion.

In the afternoon of July 4, I received an email from Liberty's counsel, which apologized for the unexpected holiday email, but requested a phone call the following morning to discuss "an issue" concerning the Court's dismissal of this case. (*See* Pl. Ex. 6). When we spoke on the morning of July 5, Liberty's counsel stated that the purpose of the call was to inquire about Plaintiff's intentions with respect to appealing the Court's Order. I responded that Plaintiff had not reached a final decision as to whether to appeal, and further pointed out that the 30 days provided for Plaintiff to deliberate whether to file a Notice of Appeal was not set to expire for two weeks. Plaintiff's counsel asked when we thought we might make a decision. I represented that Plaintiff did not plan to make an early decision, and suggested that Liberty would learn Plaintiff's decision, in all events, at the end of the 30-day time period provided by the Federal Rules.

Liberty's counsel then stated that their "client felt strongly that there should not be an appeal in this case," and that given our non-committal response to their inquiry regarding our intentions to appeal, Liberty was inclined to file a PSLRA motion for sanctions review. I stated that I believed there was no basis for sanctions in this case, and again declined to waive my client's 30-day right to appeal. A few hours later, and without further notice, Liberty filed its Motion for Attorney's Fees.[1]

In addition to the substantive reasons for denying Liberty's Motion (as described above in Section 1, above) the Motion should also be denied because Liberty's express purpose in seeking sanctions is to discourage Plaintiff's counsel from undertaking an appeal of this case. Liberty's Motion was filed in abdication of its counsel's professional responsibility to refrain from bullying their opposing litigants with threats of sanctions—an ethical duty that applies with full force in the

---

[1] The undersigned, Miriam Tauber, affirms the truth of the factual recitations contained in this Section 2, upon her oath as an attorney, intending the penalties of perjury to apply.

4

context of securities claims subject to the PSLRA. Additionally, and more critically, this Motion constitutes an inappropriate attempt to influence Plaintiff's counsel's exercise of their independent professional judgment on behalf of their client in deciding whether to file an appeal of this case—a decision which they have 30 days to make "as of right" as a matter of federal procedure.

### 3. Plaintiff's Time to Appeal Should Be Extended

In view of Liberty's Motion, which is expressly meant to harass and intimidate Plaintiff's counsel into abandoning Plaintiff's right to appeal the Court's dismissal, Plaintiff respectfully requests that the Court extend the period of time for Plaintiff to file the Notice of Appeal of the Court's dismissal Order until 30 days from the entry of the Court's disposition of Liberty's Motion for Attorney's Fees. The District Court is authorized to extend the appeal deadline under these circumstances pursuant to F.R.A.P. 4(A)(iii) (referencing F.R.C.P. 54 and 58).

Plaintiff urges the Court to consider that, absent the requested extension, Plaintiff would be required to file the Notice of Appeal by July 19—the date of this opposition to Liberty's Motion for Attorney's Fees. As I represented to Liberty, Plaintiff had not yet determined whether to appeal when Liberty filed this Motion. To be sure, Liberty's pending Motion distracts from and complicates the appeal decision for Plaintiff and his counsel—as every move Plaintiff makes to further advance this case is now coupled with a looming threat of sanctions (however meritless and inappropriate). But Plaintiff is also, in that sense, specifically inclined to file an appeal to combat the surprising (and insulting) assertion in Liberty's Motion that his claim is "frivolous" and the implicit accusations of his attorneys' professional incompetence.

But regardless of how they assess these competing threats and interests, Plaintiff's counsel are solo practitioners who are not immune to the prospect of being compelled to pay (or endlessly fight the claim that they be compelled to pay) the legal bills charged by a major corporate law firm to one of the world's largest media companies. Given the context of this Motion, Plaintiff urges the Court to permit him to take the prescribed 30-day time period to contemplate the advisability of an appeal without being subject to—and unduly pressured by—Liberty's inappropriate and unprofessional threat of sanctions. It is impossible to think dispassionately with this proverbial gun to our head.

Respectfully submitted,

*s/ Miriam Tauber*    *s/ David Lopez*

Miriam Tauber    David Lopez

*Attorneys for Plaintiff*