**BAKER BOTTS** LLP

2001 ROSS AVENUE
DALLAS, TEXAS 75201

TEL +1 214.953.6934
FAX +1 214.661.4934
BakerBotts.com

AUSTIN         LONDON
BEIJING        MOSCOW
BRUSSELS       NEW YORK
DALLAS         PALO ALTO
DUBAI          RIYADH
HONG KONG      SAN FRANCISCO
HOUSTON        WASHINGTON

July 26, 2017

**VIA ECF**

Tom O'Brien
TEL: 214.953.6934
FAX: 214.661.4934
Tom.OBrien@bakerbotts.com

The Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: <u>Aaron Rubenstein v. Live Nation Entertainment, Inc. and Liberty Media Corp.</u>, No. 1:16-cv-07283 (RWS)

Dear Judge Sweet:

I write in reply to Plaintiff's July 19 letter (Dkt. No. 42) opposing Liberty's request that the Court make the specific findings regarding compliance with Rule 11(b) required by the PSLRA; find that Plaintiff and his counsel failed to comply with Rule 11(b); and award Liberty reasonable attorneys' fees and expenses in defending this frivolous lawsuit.[1] In opposing Liberty's request, Plaintiff also seeks an extension of his time to appeal the Court's judgment.

Plaintiff concedes that the PSLRA applies, requires the Court to make specific findings regarding compliance with Rule 11(b), and requires an award of attorneys' fees if Rule 11(b) was violated. *See* Dkt. No. 42, at 2. For the reasons explained in Liberty's July 5 letter and outlined below, the Court should conclude that Plaintiff and his counsel failed to comply with Rule 11(b) in filing this lawsuit. The Court should also deny Plaintiff's request for an extension of time to file a notice of appeal because Plaintiff has failed to show either good cause or excusable neglect justifying such an extension, as required by Fed. R. App. P. 4(a)(5)(A).

### 1. Plaintiff Advanced No Nonfrivolous Argument For Extending Existing Law Regarding Section 16(b) Liability

Plaintiff and his counsel violated Rule 11(b) because they put forth no nonfrivolous argument that Liberty's single forward purchase (with no corresponding sale) should be deconstructed and recast to create Section 16(b) liability. Although Plaintiff's counsel now argue that they were attempting to extend existing law, both their pre-litigation correspondence and opposition to Liberty's motion to dismiss expressly asserted that

---

[1] Capitalized terms not defined herein have the meanings set forth in Liberty's July 5, 2017 letter (Dkt. No. 39).

Active 35839643.3

Section 16(b) liability was "dictated by" ***already*** existing law.[2]  Before Plaintiff filed this lawsuit, counsel for Liberty and Live Nation Entertainment explained in detail why existing law, including *Sperling*, did not support Plaintiff's contentions.  See Dkt. Nos. 39-1, 39-2, 39-3.  Agreeing with Liberty and Live Nation on each point, the Court dismissed Plaintiff's Section 16(b) claim based on the application of existing law to undisputed facts:

| **Reason for Dismissal** | **Basis in Settled Law** |
| --- | --- |
| Liberty's forward contract was settled more than six months after it was established.  Dkt. No. 37, at 1–16. | "The Forward Contract is the same type of derivative analyzed in *Sperling*, and the Second Circuit's holding in that case applies:  If the quantity and price of the shares subject to a forward are determined by formulas in the contract, the 'purchase' or 'sale' is deemed to have occurred for Section 16(b) purposes when the contract was executed, not when the final quantity and price become known."  *Id.* at 14 |
| Even assuming Liberty had established both a long call position and a short put position, both hypothetical options would have been exercised simultaneously, resulting in an exempt transaction under SEC Rule 16b-6(b).  *Id.* at 17–18. | Citing *Sperling* in holding that "[t]he Bank's hypothetical exercise of its hypothetical put option is a 'non-event' as a matter of law."  *Id.* at 18. |
| Liberty did not realize a profit from the challenged transactions.  *Id.* at 17–23. | "[N]o precedent supports interpreting Rule 16b-6(d) to require an insider to reimburse the 'consideration received' for writing an alleged option instead of the 'premium received.'  As Plaintiff concedes, the only authority on point is to the contrary."  *Id.* at 22 (citation omitted). |

---

[2]   *Compare* Dkt. No. 42, at 2 ("[S]anctions are not warranted where a claim is based on a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.") (quotations omitted), *with* Dkt. No. 42-2, at 2 ("I believe the 16(b) treatment, including the premium analysis, outlined above is ***dictated by*** the court's analysis in [*Sperling*] … in which the court separated a forward contract into its two separate 'obligation' and 'option' components… .") (emphasis added); Dkt. No. 32, at 1–2 ("Liberty ignored ***the Second Circuit's express guidance*** … .  Instead, Liberty structured the Forward to bring its settlement within the scope of the remedial statutory short swing trading proscription, and ***indisputably*** profited from that transaction structure.  …  Liberty's Forward transaction is ***specifically within*** the scope of the strict liability statute … .") (emphasis added); *id.* at 6 ("Liberty profited from a short-term, fixed price forward transaction with ***well-established*** strict liability consequences under Section 16(b).") (emphasis added); *id.* at 8 (asserting that "Plaintiff seeks to enforce the statute consistently with ***generally understood*** Section 16 compliance practice," and that *Sperling* "***directly foreclosed***" Liberty's arguments) (emphasis added); *id.* at 10 ("As *Sperling* establishes ..."); *and id.* at 11 ("as ***specifically prescribed*** under SEC Rule 16b-6(d) and ***repeatedly recognized by courts in this Circuit.***") (emphasis added).  Nothing Plaintiff argued suggested that he was seeking to extend existing law.

**BAKER BOTTS** LLP

- 3 -                                                                                                                    July 26, 2017

The law, the underlying facts, and the application of the law to those facts were not subject to reasonable dispute. Plaintiff's claim thus had no objectively reasonable chance of success. In other words, contrary to Plaintiff's argument that his claim was "questionable, but manifestly plausible" (Dkt. No. 42, at 3), his claim never had a chance, precisely what the PSLRA was intended to deter.

Plaintiff and his counsel again try to defend their lawsuit by suggesting that the distinction between collared and collarless forward contracts was an area of uncertainty in the law. *Id.* at 3. But any such distinction was and is of no import. As the Court correctly held, "[w]hat the Second Circuit relied on for its transaction-matching holding in *Sperling **was not the inclusion of collars in the forward contracts***, but rather the inclusion of pricing formulae in those contracts… ." Dkt. No. 37, at 16 (emphasis added).

Rule 11(b)(2) has a simple and objective requirement: A claim must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). That was not the case here, and nothing in either the PSLRA or Rule 11(b)(2) supports lawyers asserting such unsupported legal claims, regardless of their self-described experience or self-asserted "watchdog" function. *See, e.g.*, *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) (noting that the "express congressional purpose" of the PSLRA mandatory sanctions provision is "to increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of frivolous securities claims."); *Gurary v. Winehouse*, 235 F. 3d 792, 797 (2d. 2000) ("Congress passed the PSLRA to give 'teeth' to Rule 11, recognizing the need to reduce significantly the filing of meritless securities lawsuits [because] existing Rule 11 has not deterred abusive securities litigation.") (citations and quotations omitted). Liberty respectfully requests that the Court conduct the mandatory PSLRA review, find that Plaintiff and his counsel failed to comply with Rule 11(b), and award Liberty reasonable attorneys' fees and expenses in defending this frivolous lawsuit.

### 2.  The Court Should Deny Plaintiff's Request for an Extension of Time to File a Notice of Appeal

Plaintiff failed to file a notice of appeal within the required 30 days from the date judgment was entered. *See* Dkt. No. 42; Fed. R. App. P. 4(a)(1)(A). Instead, two days before that deadline, Plaintiff requested that the Court extend his time to file a notice of appeal until 30 days following the Court's resolution of Liberty's request for the mandatory PSLRA findings as to Rule 11(b) compliance. Dkt. No. 42, at 5. The Court should deny Plaintiff's request.

In an apparent typographical error, Plaintiff suggests that the Court "is authorized to extend the appeal deadline ... pursuant to F.R.A.P. 4(A)(iii)." *Id.* at 5. But there is no "F.R.A.P. 4(A)(iii)." To the extent Plaintiff intended to cite Fed. R. App. P. 4(a)(4)(A)(iii), that provision only extends the time to file an appeal when a party files a motion "for attorney's fees under Rule 54 ***if the district court extends the time to appeal under Rule 58***." Fed. R. App. P. 4(a)(4)(A)(iii) (emphasis added). Under Fed. R. Civ. P. 58(e), if a timely motion for attorneys' fees is made, the Court may order that the time to file a notice of appeal runs from the entry of

**BAKER BOTTS** LLP

- 4 -                    July 26, 2017

the order disposing of the motion. Because this Court has not entered such an order, Fed. R. App. P. 4(a)(4)(A)(iii) is inapplicable.

Fed. R. App. P. 4(a)(5)(A), on the other hand, permits a court to extend the time to file a notice of appeal at a party's request. However, the requesting party must show "excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A)(ii). Plaintiff has made no attempt to show excusable neglect, nor could he: His counsel's letter admits that he and counsel knew about the 30-day deadline but planned to decide whether to appeal "at the end of the 30-day time period provided by the Federal Rules." Dkt. No. 42 at 4.

Nor has Plaintiff demonstrated good cause. Plaintiff alleges that two weeks before the deadline for his notice of appeal, Liberty's counsel conferred with Plaintiff's counsel about Liberty's intention to seek the mandatory PSLRA findings as to Rule 11(b) compliance, which Plaintiff's counsel viewed as intimidation. Because Liberty's deadline to seek the required PSLRA findings came *before* Plaintiff's deadline to appeal, Liberty's counsel could not and did not threaten to seek the required PSLRA findings if Plaintiff appealed. Liberty simply wanted to understand Plaintiff's intentions before spending even more money on this frivolous lawsuit.

In any event, as a matter of law, a request that this Court make the findings *required by statute* does not constitute either "an inappropriate attempt to influence ... counsel's exercise of their independent professional judgment," *id.* at 5, or good cause for an extension of time to file an appeal. Neither the PSLRA nor the Federal Rules provide that the deadline to file an appeal in a lawsuit subject to the PSLRA runs from the date the court makes the mandatory PSLRA findings as to Rule 11(b) compliance. Plaintiff points to no legal authority permitting an extension of the deadline to appeal where a court has not yet made the mandatory PSLRA findings.

Because Plaintiff has not made the showing required to support his request for an extension of time to file an appeal, the Court should deny that request.

Respectfully submitted,

*/s/ Thomas E. O'Brien*
Counsel to Defendant Liberty Media Corporation

cc:   All Counsel of Record (via email)